Good morning. May it please the court, I am Jeffrey Skolnick for the appellant in this case, Margaret Shinaberry. The two issues that we have brought on this appeal are whether the district court erred in finding that the administrative law judge performed the function-by-function analysis and correctly considered moderate limitations in concentration, persistence, or pace. And the second issue is did the district court err in ruling that the administrative law judge correctly found that the appellant could perform light duty. Let me start, if I may, with the first argument. This honorable court in Masseau v. Colvin stated that if an ALJ finds moderate difficulties in concentration, persistence, or pace, the ALJ must ask the VE how this would affect the ability to work. And restricting the hypo to simple routine tasks or unskilled work is not sufficient. But that is what the judge did in the record, and that's what the judge did in her opinion. The ability to perform simple tasks is different from the ability to stay on task. The claimant had a consultative evaluation with a Dr. Burlingame, a psychologist. And Dr. Burlingame found that Ms. Shinaberry's prognosis was uncertain. Her attention, concentration, and calculation were poor, and her ability to tolerate work stresses in a 40-hour work week were poor. Reading and math calculations were also poor. The administrative law judge found that she could not return to her prior work as a sales associate, yet the VE found that she could be a sales assistant or order clerk. And we listed in our brief the description of what's required on page 19 and 20 of our brief, but it includes tasks that are contradictory to the findings that she's unable to be able to do math calculations. She testified at her hearing that if someone were to give her some change, she could count it, but that if someone gave her a $10 bill, she would need help evaluating if she was getting the correct change. So the idea of her being a sales attendant or order clerk based on the DOTs is contradictory. And as this court is well aware from its recent cases, including Woods, written by you, Judge Mons, Your Honor, they found that if there's an inconsistency, it's the judge's obligation to rule on that inconsistency. Was this argument made in front of the ALJ or in front of the district court? Yes, this argument was made in front of the district court. Was it made in front of the ALJ? It was not made in front of the ALJ. I was actually the attorney of record in front of the ALJ, and there's a very interesting thing that occurred in reviewing the transcript that just intensifies. But I was asking questions to the vocational expert, and I was asking questions about sedentary work at age 50, and the judge actually cut me off and said that there's a grid for that. There's what? A grid. A grid is the chart that's used to determine if someone is able to work or not able to work. Now, did you make this argument in the opening brief before us? About what occurred at the hearing? About the so-called conflict, yeah. Yes. Yes. Okay. If you could direct me to that. I think I missed it. I thought it was in your reply brief. Indeed. And if I'm wrong, I apologize. I could have missed it. You can address that later. I don't want to use up your time here for you. Okay. Thank you. I appreciate that. I do believe it's in there because I believe the breakout of the two jobs is actually in my brief of what those two jobs are and how it conflicts with the findings of the judge. It sounds like you've done these cases before, right? You're an expert? I never call myself an expert. I've been doing them for more than 30 years. Yes, Your Honor. Okay. Could you just give me a little bit of what my clerks sometimes call atmospherics? It seems like a very extensive ALJ opinion. Do all the ALJ opinions look like this? Two things. First of all, some of them are that long, and that is the case. But even though it may be long, that doesn't necessarily mean that it addressed all of the questions. Right. And that's my second question. Are these boilerplate things that are put in? I'm just trying to get a sense of what your work looks like usually. Well, what happens is some of it is boilerplate that's used. Some of it has changed. For example, some of the cases after Mascio no longer had some of the boilerplate that the Fourth Circuit found was unacceptable. Indeed. Yeah. So some of it's boilerplate. It's actually what I understand is the judges don't actually write the opinion. It's written by writers, and then it's reviewed and approved by the judge. But, yes, I believe parts of it are boilerplate, because some of the language we see consistently over and over again. And that may be part of the problem here, because at one point in the opinion, and I believe this is page 31 of the administrative record, but at one point the judge curiously states at page 31 of the record, she curiously states at the third full paragraph that she gives partial weight to the state agency's medical consultants' physical assessments. And then in the next sentence, word for word, except it changes to considerable weight. Now, that's a problem for this court, because the cases that we have, including Monroe, which was written by Judge Traxler, the court needs to be able to tell what weight is given to the opinions. The judges are required, administrative law judges are required to evaluate and give weight to the different opinions. And so when, and because your honors and the district court need to know what is being, how it's being weighed so that you can review it. But for the judge to say in one sentence she's giving partial weight, and then in the next immediate sentence to say that she's giving considerable weight. Well, sorry, go ahead. I can't find it right in front of me now, but it seems to me that LJ then went on after saying these things to explain why there were differences. I can't put my hands on it right now. Am I wrong about that, that the subsequent paragraph was explanatory? You know, it's a long opinion, so there may be different explanations given along the way, but I don't know if that conflict on its face is ever fully resolved as to whether this is of partial weight or of a considerable weight. It seems, and of course, the biggest problem is, as your honors are aware, is that these opinions by the doctors were before she ever had the rotator cuff tear, the herniated discs in her neck, and the slap tear in her left shoulder also. I'm sorry, can we go back to the two sentences that you just read? Yes. Because I'm not sure they conflict, and I need your help here. So the AL, this is on J31, yeah. The undersigned gives partial weight to the state agency's medical consultants' physical assessments at the initial and reconsideration levels that claim it would be limited to work at the light exertional level with occasional postural limitations. The undersigned gives considerable weight to the finding that the claimant can perform work at the light exertional level with occasional postural limitations. It seems to me, so the state agency says that she's limited to that, and they're giving partial weight to that, but you're also finding considerable weight that she can, in fact, perform in that limited capacity. How is that in conflict? Well... I know the partial weight and the considerable weight are different, but they're talking about different things. Okay. Well, it seems to me that they're talking about the same thing. They're talking about partial weight to whether she claimant would be limited to work at the light exertional level. That's what's given partial weight, that she's limited to that. Okay? Right. And then they give considerable weight to the fact that she actually can perform at the light exertional level. Okay. I see that as, like I said, as a conflict. Okay. Maybe I'm just misreading it. But because I went word by word through it, and maybe I misread it, but the point is that these evaluations were done before she had significant changes in her medical condition so that the findings by these two doctors who are reviewing the record is really of a different person because of the fact that she didn't have a rotator cuff tear on the left, which was diagnosed afterwards after she fell a year or so later. So these findings are based on faulty information because the situation changed dramatically after the fall. I represented years ago, the reason I started doing Social Security cases was I represented people in steel workers who had rotator cuff tears. And in essence, after that, they could never go back to work because lifting over the head was limited at best. So those people ended up on Social Security disability because they could no longer work for Bethlehem Steel and would end up on a medical retirement. But the point I'm making here is that these findings by the state agency medical consultants are before the analysis or the additional medical issues. And the problem is that Her Honor added one limitation of occasional lifting over the head without any medical documentation on which to base that. There's nothing in the record. She just was trying to compromise in some fashion and decided to add that. But that clearly was on her part a medical decision that she made that this person could occasionally lift without knowing because that's a medical limitation that she gave. And that clearly under the Woods and the Monroe and other cases, this doesn't make a logical bridge. It blows the bridge up is what we have here because she makes a decision of occasional lifting over the head which allows for these jobs. If she had said no lifting over the head, then these jobs wouldn't have been available. It would have been a different circumstance. It would have put her in sedentary. So I think that the circumstances have changed. There also is not anything here that asks if she could do the moderate that's found by the psychological studies. Never addresses whether she could do this in a 40-hour job. In fact, when she retired from Anne Arundel County Schools on a medical retirement, she only worked part-time according to her testimony at the hearing. She only did these two jobs that she did, the sales associate's jobs, or working at the Dick's as a fishing, putting fishing supplies away. These were only done on a part-time basis. And so she was never, the judge never goes to the issue of could this be continued, those moderate limitations on a permanent basis, on a 40-hour basis. And I believe my time is just about up, so thank you if you have any other questions. Thank you. Thank you, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. My name is David Mervis, and I'm here on behalf of the Commissioner of Social Security. And what I'd like to do, if I could, is to start just briefly with some of the points that were raised by Your Honors before I get to the main argument, because I do think there are two issues that merit just brief attention. The first would be that, as Your Honor, Judge Motz pointed out, the two points, the ALJ's discussion of the state agency consultant's opinions is not confused. It is not inconsistent. It's not word for word. What the ALJ has done is to say I give partial weight to the assessments as a whole that she can, is limited to this thing, this set of limitations. Now I'm going to give considerable weight to this specific finding within that, that she can perform this light work. But I'm going to go on and find additional limitations. And that's, Judge Traxler asked whether there was an initial or a later discussion of that point. And, in fact, it proceeds immediately thereafter. So that paragraph on page 31 is, here's why I'm willing to give more limitations to this individual. So, as to that point. I'd also like to just briefly address the point that Judge Keenan made as to the argument being, whether there has been an argument here today that, in the reply brief before this court, that it was waived and not made at the district court. And the answer is yes, there is. The reason for that is there wasn't an argument made, there certainly is case law in this court, there wasn't an argument made about a conflict between the RFC, which is the residual functional capacity. I'll try not to use jargon, I apologize. And the dictionary of occupational titles. There's a whole body of case law on that. That argument was not presented to the district court. Or in the first brief. Or in the first brief, that's quite correct, Your Honor. What was presented, so our position is any argument related to that issue has been waived. What was made in the district court and in the initial brief is an argument about whether the functional capacity here, the RFC, is supported by substantial evidence. And, of course, that is before the court, and I'd be happy to talk about that. So maybe you can tell us how you distinguish this case from Masiccio? We've always pronounced it Mascio, but I confess I'm not the first. I wasn't the attorney on that case, so I'm not sure. Well, the question, you're the attorney now, so how do you distinguish this case from that one? So my position, and what I'd like to explain to you, Your Honors, today, is that this case is important because of the differences that it poses. So here's what we've got. We've got a decision in Mascio. It's existed for now five years. There's a lot of discussion about how it should be applied and what it does to the governing standard. What it didn't do is change that governing standard. And what has always been true before Mascio, in Mascio, and after Mascio, is that the ALJ must explain what the limitations are in the functional capacity that he or she finds, why they are important, why they're supported, and that's what those findings are what this court, and any review in court, is asked to consider, whether those findings are supported by substantial evidence. So what happened in Mascio, and what this court said, is that the ALJ ignored, without explanation, moderate limitations in concentration, persistence, or pace that was found, that the ALJ, in that case, had found at an earlier step. So this gets complicated quickly, obviously, but because of the sequential evaluation, because of the functional domains that are assessed at one step, and then the functional capacity that's assessed later. But what I'd like to do, what I'd like to suggest, is that this case, before Your Honors today, is not very complicated, because what you've got is an ALJ decision that explains a couple of things that are crucial to this point. It explains that Ms. Chinaberry would be moderately limited in performing complex tasks. That's at page 32 of the record in the decision. But, the ALJ goes on to say, her concentration and attention were adequate. That's at page 32. So, she could perform unskilled work requiring simple, routine, repetitive tasks. That's at page 33. So, when we bring Mascio into the analysis, because what I just said now is looking at this decision, does the ALJ explain how this claimant can do this work? The answer is yes. When we bring Mascio into the conversation, the analysis shouldn't change, but we ask a couple of different questions. The first question, I think, is a general matter, is can an ALJ account for a limitation found at step 3 of the sequential evaluation? So, a limitation with moderate difficulties in concentration, persistence, or pace. So, that's a finding that the ALJ made. Can the ALJ go on and find that that claimant, that individual claimant, is limited to simple, routine, repetitive tasks? And the answer to that question is yes. It's gotten, that is not inconsistent with Mascio, because what needs to happen is, and what didn't happen in Mascio, and what did happen here, is that the ALJ explained why. So, this court in Mascio cited numerous other cases. It cited Winchell from the 11th Circuit, which discusses the fact that if the evidence demonstrates that claimant can engage in these tasks, these simple, unskilled tasks, despite the moderate difficulties in concentration, persistence, or pace, then that limitation is sufficient. Excuse me. Yes. As I understand what he's arguing, is that the ALJ should specifically include moderate limitations in concentration, persistence, or pace, and it's hypothetical to the VE? Sure. I think the answer to that question is no, they shouldn't, they needn't, they may. But what the ALJ's responsibility is, there's no magic words requirement. This court hasn't held that there's a magic words requirement, and a number of other circuits have addressed that very point, and the commissioner brought to this court's attention a recent decision from the 3rd Circuit, in Hess, in his letter a couple of months ago that we filed. I think that decision, published decision from the 3rd Circuit, answers this question quite well. There's no magic words requirement. What the ALJ's responsibility is to do, is to explain how the findings made throughout the decision run together, you know, hold together, so there's a consistency throughout. That's the problem, isn't it? Or if there is a problem, the ALJ never expressly ties, never says that the defects in concentration, persistence, and pace are adequate for simple tasks. It never makes the bridge, right? No, I think that, Your Honor, the... Okay, well you tell me, because I... The ALJ says a lot of things, so maybe they did say that, but I couldn't find that. What the ALJ says, this is on 32. Right. In first the paragraph discussing the state agency consultants, and then a paragraph discussing the concentrative examiner, Burlingame. So number one, would be moderately limited in performing complex tasks. That's sort of in the middle of that second paragraph. Right. And then number two, can do these ones to step three, excuse me, concrete three-step directions, can follow a simple command. Now we're into Dr. Burlingame's opinion. Attention and concentration, excuse me, concentration and task persistence were adequate. That's sort of in the middle of the next paragraph. Yeah, I see it. Right. So that is the ALJ's discussion of the fact that this individual has difficulty with complex tasks, but her concentration and persistence are adequate. That's all that need be explained. And I want to step back again, because... But if it said upon that her concentration and task persistence were adequate for simple tasks. But it just says they're not adequate for hard tasks, complex work. Right? Well, that's right. But that is the then, if they're, she's moderately limited in these complex tasks. Right. And then she is able to perform the simple, the carry out concrete three-step directions, could recall and follow a simple command, and that her concentration and persistence are adequate. So those are the evidentiary building blocks for the finding that she can perform this work. And that, again, is what this court, the district court, and what this court is asked to review,  So the ALJ says she can perform this work, this unskilled work involving simple, routine, repetitive tasks. And here, right in the decision, you've got the building blocks, the evidentiary basis for those findings, that she can perform this simple work, but she's moderately limited in complex work. So I'm not going to allow her, the functional capacity finding will exclude this complex work that she would have a problem with, that the evidence establishes she has a problem with. So in that, what I would, sort of the way I've framed the, I mentioned there'd be two questions, and this is really the second question. So the first question is whether the ALJ's decision can include these simple, routine, repetitive tasks. And then, again, the answer would be yes, provided that the analysis is there in the ALJ's decision. And then the second question is what we've been talking about just now, Your Honor. So that's, did this ALJ offer this explanation? And this is where the ALJ did that. So the ALJ cites those two opinions, explains how she's weighed them. It's also important to note that the ALJ incorporated those state agency consultant opinions, and they go on. The ALJ didn't include every word that the state agency consultants found or included in theirs, but, of course, did include the idea that she is moderately limited in complex tasks. Can I ask you another question that your colleague brought up? He kept saying, well, these doctors didn't consider all of these later things that happened to this woman. Sure. So I think I want to sort of put a, that relates to the physical aspects, and that's what my colleague's talked about. I do think it's, before I answer that question, I do think it raises an interesting point on this first issue, this mental aspect. Because what you actually, in this case, is interesting in one way, when we're talking about these mental limitations, Ms. Shinneberry had a lifelong learning disability. So she worked full-time for over 20 years despite that learning disability. And that's what we're talking about. That's why the ALJ included the limitations that she did and found that this work needed to be limited, tailored to her mental capabilities. So none of that changed. There's a consultative examination, but none of the mental aspects changed. Some of the cases that come to this court, or district court certainly, have to do with worsening depression, worsening anxiety, something along those lines. We don't have that here. We have a lifelong learning disability that the ALJ accounted for, but that Ms. Shinneberry was able to work for 20 years, over 20 years with. Now the second piece, what Your Honor asked about, so that has to do with the physical aspects. Because there no doubt were changes in her physical condition. So the state agency physical consultants rendered opinions, and those were earlier, no question. They took some of the evidence, the evidence that was available at that time, and didn't have access to some of the other evidence. But the ALJ considered everything. And so what my colleagues argued is that, sort of implied I think, is that a logical bridge requirement is the same thing as needing an opinion from a doctor on every single limitation in the RFC. And that's not a requirement. There is no requirement that a specific, every specific finding be found, if I can use the word again, in some doctor's opinion. That's just not necessary. The ALJ's role in this, in every case, is to assess the evidence. Now certainly medical opinion evidence is useful and is considered, and that's what the ALJ did here. But what the ALJ doesn't need to do is to say, here's this opinion that supports this limitation that exactly mimics this, or includes this limitation. And here's this opinion that exactly includes this limitation. That's not necessary. What the ALJ had here is evidence, so there were, there was a shoulder issue. And so what do you find in the RFC? You find the residual functional capacity. You find limitations relating to that condition. Now there's an opinion from Ms. Matthews is the, I believe she's a physician assistant. So the ALJ can, and that's from actually after the ALJ's hearing in this case. So it's sort of the latest piece of evidence that the ALJ considered. It says, you know, she's limited to lifting, can't lift more than 10 pounds. She's been limited for, for what, I think the opinion was issued in 2016. She says for four years, or two years, excuse me, since 2014. Now that, of course, predates the shoulder injury. So the question of whether that opinion is worth more than any sort of other assessment of this longitudinal evidence is open. But more specifically, what the ALJ says is that she doesn't explain, and I guess it's actually related to what I'm saying. She doesn't explain why that's the case, number one. And there's an opinion that Ms. Matthews, excuse me, there's a note from Ms. Matthews herself. This is March 2015, and the ALJ says on page 32, there's a note from March 2015 that says the, that has normal musculate skeletal findings. Normal strength and tone in the left and right shoulders. So the ALJ is saying Ms. Matthews' own notes don't support this opinion. And that's perfectly acceptable. The ALJ has, takes all the evidence that is presented and says is this worth weight, is this worth weight, and what weight. So that's, that's what the ALJ did with respect to the physical condition. Again, there's always, by definition, there's going to be a gap between your, and this, this case is interesting because there's, this is sort of the latest possible point where you can get an opinion, which is after the hearing. But there's always going to be some gap between when the ALJ decides the case and when the most recent opinions are. This case, there was a gap, and the ALJ went beyond what the state agency consultants found. And I think one of the reasons we're talking about whether there's some inconsistency between what the ALJ said about those two, or how the ALJ explained her analysis of those state agency opinions, is the point. Is the ALJ said, no, those were older. They didn't account for everything. So we're going, we're going further. So what do we have? We've got limitations to her ability to reach. That's, you know, entirely appropriate, and what one would expect. If you look at the record in this case, you'd expect that the ALJ would say I'm not going to adopt these older opinions wholesale. I'm going to say that there is some support for them. And that's the ALJ's discretion to explain why that there is some support for this light limitation, the some postural limitations. But I'm going to go beyond that because there's more evidence. And I, the ALJ, have access to more evidence than the state agency consultants did. And that's what the ALJ did here. So I'd like to return, if I could, to the analysis that the Hess court did, the Third Circuit did, and the analysis that this court did at Sizemore, which is a published case from a couple years, a couple years ago after Mascio. So, again, they focus on the exact same thing, which is there's not a per se limit. We, the court, are not articulating some per se rule. What needs to happen is that the ALJ explains why the findings are what they are. That's always true. That's not, that wasn't new in Mascio, and that isn't new today. So what the ALJ did in Sizemore was cite opinion evidence that showed that the claimant could do, could stay on task, could do the work necessary, despite her moderate, his, I believe, moderate difficulties in concentration, persistence of pace. What the ALJ did here was the same thing, is to say that this claimant needs a limitation to complexity. Another claimant may well need a limitation to another thing, and that's not improper. The ALJ doesn't need to recant specific words, because the ALJ explains what this claimant's difficulties are. And what this claimant's difficulties are, and have been for her entire life, are difficulties with complexity. And that's consistent, as the district court noted, with Dr. Burlingame's assessment. So Dr. Burlingame's assessment is also given, I believe considerably, great, I think is the word, great weight, by the ALJ. Because Dr. Burlingame says what this claimant has is difficulty in processing, in math, in language. So what one would expect, then, is that the ALJ excludes jobs, occupations, that would involve that complex work. So again, and Judge Gallagher in the district court noted this, she simply sees, and the commissioner does too, those opinions as fully consistent with one another. The ALJ explained that the problem here is complexity. It's not distractibility. It's not, you know, any of the other things that might warrant another limitation. And that's, again, zooming back, what you've got is an ALJ who says that Ms. Chinaberry is going to be moderately limited in one regard, in this complex task performance, but her concentration and persistence are adequate. And so there's no Mascio error. There's no problem under Mascio, because what Mascio says is the unexplained inconsistency is the error. Mascio says, but the ALJ gave no explanation, therefore remand is necessary. Here you've got the explanation. And now, Judge Motz, it is certainly true. I want to just, I don't want to give short shrift to your point. There's always going to be room for more explanation. There's always going to be more words that can be said. And if I were to write this today, I could write it differently than this ALJ did. But that's not what we're here for. What we're here for is to say, can this court and the reviewing court, the district court, excuse me, say, yes, I can. Can this court trace the ALJ's reasoning? Can this court understand what the ALJ found and why she found it? And the answer in this case is yes. The ALJ explained the limitations, why this specific claimant needed these specific limitations. And there's simply no error under Mascio. Thank you. Thank you. Your Honors, I wanted to first start by addressing the issue of what was brought up in the first brief. Because on page 19 and 20 of the brief, we discuss the fact that these jobs require certain items, certain, according to the DOT, certain skills, if you will. And that she couldn't do these things because of the noted limitations. The reference specifically to the Thomas case was not made in the opening brief because the Thomas case had not been ruled on by this court. So in my reply brief, where the court made crystal clear that it's the burden of the ALJ to resolve conflicts in the VE's testimony, that's, so it's in there. It's just not with the quotes from Thomas because- I wouldn't characterize it as a conflict, but you're saying it doesn't have to have that magic terminology that you were laying out, the fact that there was a mismatch? I didn't have the great quotes that this court gave me for my reply brief. But yes, what I was saying here was that how could she possibly do marking and ticketing merchandise? How would she be able to do inventories of stock if she's limited in the fashions that the VE, or rather in the hypo? But going back to this idea of a doctor being, or rather a judge being a doctor, which this court has found to be a problem in prior cases, occasional I believe is defined by the Social Security Administration as 0 to 25%. So if she were to occasionally lift 25% of the time in a full-time job, that would be 10 hours, a maximum of 10 hours a week. None of us can possibly know with somebody having a rotator cuff tear, totally new in the evidence, a slap tear, and herniated discs of the neck, none of us could decide that someone could be occasional lifting over their head. That is a decision that only a doctor can make. I'm not making the argument that she needed to send out to the doctor. But when she decided, her Honor decided to throw out the PA's opinion as to the 10-pound limitation, two things I would say. First of all, if you read the discussion in the transcript, I asked her specifically if that was what she was looking for, a short synopsis. And she said yes. So that's what I gave her. Yes, it was from a PA, but it was a statement of the nature that she had requested. Because I even remember using the word short, because I wrote it in the transcript again. She didn't ask for an artful opinion as to what all the limitations were and where it shows up during examinations. She asked for something short, because very often that's what they ask for in the opinion. And if that was a problem, then instead of telling us that wasn't good enough, instead of denying it, because by... We now have a clean slate. It's like the white on the ceiling here. We don't have a medical opinion as to whether she can lift 25% of the time over her head in doing these jobs. Which basically in doing inventory, in doing stock work and order clerk, there are limitations here that require more than just... Will require 25% of the time lifting. So in essence, she played doctor. She gave a limitation, maybe with the best intentions. But why not say, because of that, that she can't lift at all, or she can't lift even occasionally? That maybe she can only lift a total of three hours a week. Remember, the jobs that she had, those two jobs that she said she couldn't go back to anymore, that the judge said she couldn't go back to anymore, were part-time. And that's all the time I have. So thank you very much. Thank you very much. We will come down and say hello to the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, Barbara Milano Keenan, William B. Traxler Jr.